UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| CARYL WEST, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 2:04cv28 PS |
| v. ) | |
| ) | |
| RON POSTMA'S PLANET TOYOTA ) | |
| TOYOTA FINANCIAL SERVICES, and ) | |
| SHAWN LAWSON, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

This matter is before the Court on Plaintiff Caryl West's Motion for Summary Judgment [Doc. 27]. West brings claims against Ron Postma's Planet Toyota , Toyota Motor Credit Corporation, incorrectly sued as Toyota Financial Services, ("Toyota Credit") and Shawn Lawson pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. §1601 *et seq*.[1]  West claims that the defendants violated TILA by failing to disclose the cash price or principal loan amount, the total sales price, the finance charge, the annual percentage rate, and the terms of repayment in connection with West's purchase of a Lincoln Navigator.  West also brings a state law claim for conversion of his previous automobile, a Mazda Millenia.  Because we find there are significant unanswered questions of material fact as to both the TILA and the conversion claim, Plaintiff's motion is **DENIED.**

---

[1] Defendants Planet Toyota and Toyota Credit filed a joint response to this motion. Defendant Lawson has failed to appear in this action and, on December 21, 2004, the Clerk entered default against him.

**BACKGROUND**

This action arises out of what can only be described as a shady transaction between Lawson and West.  In the summer of 2003, West, an Indianapolis resident, apparently told his mother, a Gary resident, that he was interested in purchasing an automobile.  At the time, West drove a Mazda Millenia, but was interested in purchasing a larger vehicle.  Lawson became involved in West's search for a new car by attempting to broker at least two purchases with or on behalf of West.  Lawson is a family friend and the pastor at West's mother's church.  Sometime in the past, Lawson had helped West's mother purchase a car.  During their course of dealing, Lawson represented that he worked for a number of car dealerships, one of which was Planet Toyota.

Lawson first attempted to help West purchase a Ford Expedition – this transaction was completely separate from Planet Toyota.  On approximately June 15, 2003, at a Meijer's store parking lot on Interstate 65 between Indianapolis and Gary, Lawson delivered a Ford Expedition to West and took West's Mazda Millenia as a trade-in.  The two met at the Meijer's parking lot on Lawson's suggestion.  West does not recall whether he filled out any paperwork with respect to the Ford Expedition, but it appears that Lawson was going to attempt to work out a price and financing for the Expedition such that West's monthly payments on the Expedition would be equal to West's payments on his Mazda.  West left that day with the Ford Expedition but, ultimately, the deal fell through.  West returned the Expedition to Lawson, but Lawson did not return the Mazda.

Instead, on July 4, 2003, Lawson met West at his mother's house in Gary.  This time, Lawson brought a used Lincoln Navigator from Planet Toyota.  At this meeting, Lawson told

2

West that he worked with Planet Toyota. He also told West that Planet Toyota was selling West the Navigator at the "auction price" so the monthly payments would be less than West's old Mazda payments. Lawson also brought a number of Planet Toyota forms for West to sign. These forms were preprinted sales forms with blank spaces for the terms of each specific transaction. The forms that Lawson had were not filled in with any financial information. Lawson did not provide the exact price or financing terms, but instructed West to sign the blank forms purportedly so that West would not have to return to Gary to sign the forms after Lawson confirmed the price and financing. West signed and dated the forms believing that Lawson would contact him if the terms were different than what they had discussed. At no time during this transaction did West visit Planet Toyota, speak with any employee of Planet Toyota, or receive a business card from either Lawson or any other person purporting to represent Planet Toyota.

What happened next is a mystery. At some point, someone filled in pricing and financing terms on the forms that West signed. Those forms were then signed by Calvin Purdue, Planet Toyota's Secondary Finance Manager, and/or Jean Kendall, Planet Toyota's Office Manager and passed to Toyota Credit. Nevertheless, West did not receive copies of the paperwork nor did he receive a statement or bill for a monthly payment. West called Lawson several times to inquire about the paperwork. Each time, Lawson put West off and claimed that he was still working on the deal. It does not appear from the record that Lawson attempted to contact Planet Toyota about the missing forms.

Finally, on October 31, West received a call from Toyota Credit about overdue payments on the Navigator. West told Toyota Credit that he had not received paperwork on the transaction

3

nor had anyone told him the amount of the payment that was due or where to send the payments. When Toyota Credit sent copies of the paperwork to West, West discovered that the previously blank forms that he had signed were filled in, signed by a representative of Planet Toyota, and dated. According to the forms, West's monthly payments on the Navigator would be almost $100 more than the amount to which he had agreed. He informed Toyota Credit that he had not agreed to the transaction as it was reflected in the paperwork, but Toyota Credit told West that he needed to work directly with Planet Toyota to resolve the issue.

West then spoke with John Armin, a manager at Planet Toyota, to attempt to adjust the terms of the purchase. During their conversations, Armin told West that Lawson identified potential sales for Planet Toyota, but was not authorized to conduct sales. During the course of negotiations, during Thanksgiving week, 2003, Toyota Credit repossessed the Navigator.

## DISCUSSION

**A.    Summary Judgment Standard**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See Howard v. Lear Corp. EEDS & Interiors*, 234 F.3d 1002, 1004 (7th Cir. 2000); *Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 458 (7th Cir. 1999). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.,* 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). When examining the evidence, the Court should resolve all ambiguities and draw all inferences in favor of the non-moving party. *Haefling v. United Parcel Serv., Inc.,* 169 F.3d 494, 497 (7th Cir. 1999); *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1453 (7th Cir.

1994).

**B.      TILA Violation**

TILA exists to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C.A. §1601(a).  Under TILA, a creditor[2] must disclose certain terms to the consumer including: 1) the identity of the creditor; 2) the amount financed (including a specific itemization upon the consumer's request); 3) the finance charge; 4) the finance charge as an annual percentage rate; 4) the number of payments and due dates of those payments; 5) the total sale price; and a variety of other items not at issue in this case.  15 U.S.C.A. § 1638.  Moreover, these disclosures must be made in writing and before the consummation of the transaction.  12 C.F.R. § 226.17(a)-(b).

In this case,  Planet Toyota and Toyota Credit do not argue that there was no TILA violation when Lawson required West to sign the blank sales forms in July 2003.  Instead, they argue that West has not submitted sufficient proof that Larson was acting as Planet Toyota's agent at the time of the Navigator transaction and, therefore, Larson's bad acts cannot be imputed to Planet Toyota or Toyota Credit.   Moreover, Planet Toyota argues that Calvin Perdue's and Jean Kendall's signatures on the sales documents, at most, evidence that Planet Toyota ratified the sale of the Navigator, not a TILA violation.

In this case, under Indiana law, there are two ways that Larson may be considered an

---

[2] A "creditor" is a person or company who both 1) regularly extends consumer credit and 2) is the person to whom the debt is initially payable.  15 U.S.C. § 1602(f).

5

agent of Planet Toyota.  First, Lawson may have possessed actual authority to act on behalf of Planet Toyota.  Actual authority exists when, by words or acts, the principal authorized the agent to enter into a transaction on the principal's behalf.  *Heritage Dev. of Ind., Inc. v. Opporutnity Options, Inc.*, 773 N.E.2d 881, 888 (Ind. App. 2002).  Second, Lawson may have possessed apparent authority to act on behalf of Planet Toyota.  Apparent authority exists where "a third person reasonably believes an agent to possess [authority] because of some manifestation from his principal."  *Pepkowski v. Life of Ind. Ins. Co.*, 535 N.E.2d 1164, 1166 (Ind. 1989).  To establish apparent authority, the third party's reasonable belief resulted from *the actions of the principal*, not the agent.  *Id*. at 1166-67.  Indeed, "statements or manifestations made by the agent are not sufficient to create an apparent agency relationship."  *Id*. at 1167.  The question of whether an agency relationship exists and the scope of an agent's authority is ordinarily a question of fact.  *Heritage*, 773 N.E.2d at 888

Here, West has not presented any evidence that Lawson possessed actual authority to act on behalf of Planet Toyota.  Moreover, while there are certainly some facts that suggest Lawson had apparent authority, there are also significant questions that remain unanswered.

The parties do not dispute that Lawson told West that he worked for Planet Toyota, that Lawson possessed sales forms with Planet Toyota's logo on them, that Lawson had possession and delivered the Lincoln Navigator to West, or that the sales transaction was ultimately processed by Planet Toyota and passed to Toyota Credit for financing.  However, this is not enough.

As the facts stand at this summary judgment stage, there is no evidence of any direct communication between West and Planet Toyota that would allow West to reasonably believe

6

that Lawson was acting as Planet Toyota's agent at the time of the Navigator transaction.  West did not travel to Planet Toyota to get the Lincoln Navigator; instead, Lawson brought it to West's mother's house in Gary.  West did not speak with any person at the Planet Toyota dealership prior to the transaction.  Instead, West dealt exclusively with Lawson.  Thus, we cannot conclude that a communication by Planet Toyota, the principal, led West to reasonably believe that Lawson had authority to act as its agent.

As Planet Toyota suggests, the existing facts could demonstrate that Lawson was acting as West's agent instead of Planet Toyota's.  After all, Lawson was a "family friend" who was helping West find a larger car.  Lawson attempted to broker a transaction between West and Ford before the Navigator transaction.  Indeed, Lawson took possession of West's Mazda in conjunction with the Ford transaction and did not immediately return the Mazda to West when that transaction fell through.  Instead, Lawson kept the car and continued to search for a vehicle for Lawson.

Moreover, we cannot conclude on the record before us that Planet Toyota's processing of the sales transaction is a ratification of Lawson's alleged bad acts.  We know too little about Planet Toyota's role in the processing of the sale.  We do not know who filled out the sales forms once West signed them.   It is plausible that Planet Toyota received the blank forms and filled them in with the pertinent sales information – thus, tending to indicate that Planet Toyota directed the signing of blank forms.  However, it is equally plausible that Lawson filled them out and presented Planet Toyota with completed forms such that Planet Toyota would have no way of knowing a violation ever occurred.  Equally important, we have no idea what Lawson told Planet Toyota about West's Mazda.

7

At bottom, West has not provided the Court with sufficient evidence to establish that Lawson was acting as Planet Toyota's agent at the time of the Navigator transaction (and subsequent TILA violation) and/or that Planet Toyota had any knowledge of Lawson's alleged bad acts when it processed the sale of the Navigator. Significant questions of material fact remain, precluding summary judgment. These questions include, but are not limited to:

   a.   Was Lawson employed by Planet Toyota?

   b.   If so, in what capacity?

   c.   Did Lawson receive any salary or commission from Planet Toyota in conjunction with the sale of the Navigator to West?

   d.   Did Planet Toyota in any way represent that Lawson was its agent?

   e.   Who filled in the sales forms with the final transaction amounts?

   f.   Were the forms completed or blank when representatives of Planet Toyota processed the forms?

   g.   Did Calvin Perdue or Jean Kendall have authority to process the Planet Toyota forms?

   h.   What, if anything, did Lawson represent to Planet Toyota about the Mazda Millenia?

C.   **The State Law Conversion Claim**

West also claims that he is entitled to treble damages under a conversion theory because Planet Toyota kept his Mazda even though the Navigator was repossessed. Here, again, the Court lacks facts necessary to its summary judgment analysis.

The elements necessary to establish civil conversion in Indiana track those found in the Indiana criminal statute. *Anderson v. Indianapolis Ind. Aamco Dealers Adver. Pool*, 678 N.E.2d 832, 838 (Ind. App. 1997). They are: 1) knowing and intentional; 2) exertion of unauthorized

control; 3) over another person's property. *Id*.

In this case, West admits that he gave Lawson the Mazda initially as a trade-in for the Expedition and, later, for the Navigator. (West Dep. at 30). The sales contracts also indicate that Planet Toyota used the Mazda as a trade-in because Planet Toyota paid off the outstanding balance on the Mazda loan and gave West a credit toward the purchase price of the Navigator. (West Dep. at Exs. 1, 4, 5, 6). Taken in the light most favorable to the non-moving party, these facts could suggest that Planet Toyota did exactly what it was supposed to with West's Mazda when they treated it as a trade-in.

Moreover, West has not presented evidence that Planet Toyota knew that it was not authorized to treat the Mazda as a trade-in.[3] Of course, West's failure to present such facts in support of his own motion is not fatal to his claim. For example, West could, theoretically, present the Court with evidence that Planet Toyota and/or Toyota Credit knew of the "conditional" nature of West's agreement with Lawson, but proceeded to treat the Mazda as a trade-in without final approval from West. However, without such evidence, there are simply too many unanswered questions that preclude summary judgment. These questions include, but are not limited to:

    a.    What did Planet Toyota know about the "conditional nature" of the Navigator sale and, thus, the Mazda trade-in?

    b.    Did Planet Toyota act on the Mazda trade-in in spite of knowledge that it may not be authorized?

---

[3] If the trier of fact finds that Lawson was, in fact, acting as Planet Toyota's agent, Lawson's knowledge would, in fact, be imputable to Planet Toyota. *AutoXchange.com, Inc. v. Dreyer & Reinbold, Inc.*, 816 N.E.2d 40, 51 (Ind. App. 2004). However, as discussed in Section B above, significant questions of fact preclude the Court from making any findings regarding agency.

  c.  Did West make any effort to contact Planet Toyota about the status of the Mazda prior to the repossession of the Navigator?

## CONCLUSION

Taking the facts in the light most favorable to Planet Toyota and Toyota Credit, we find that there are significant unanswered questions of material fact as to both West's TILA and conversion claims. Accordingly, Plaintiff's Motion for Summary Judgment [Doc. 27] is **DENIED**.

  **SO ORDERED.**

ENTERED: November 16, 2005

                S/ Philip P. Simon
                PHILIP P. SIMON, JUDGE
                UNITED STATES DISTRICT COURT